E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
DAVID C. LACHMAN (Cal. Bar No. 261711)
NISHA CHANDRAN (Cal. Bar No. 325345)
Assistant United States Attorneys
General Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-5564/2429
    Facsimile: (213) 894-0141
    E-mail:   david.lachman@usdoj.gov
               nisha.chandran@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 22-CR-00205-JFW-13 |
|---|---|
|       Plaintiff, | GOVERNMENT'S SENTENCING POSITION REGARDING DEFENDANT AMBER JANE WADE |
|        v. | |
| NATALIE LE DEMOLA et al., | Sentencing Hearing Date: January 9, 2023 |
|       Defendants. | Hearing Time: 9:30 a.m. Location: Courtroom of the Honorable John F. Walter |

     Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys David C. Lachman and Nisha Chandran, hereby files its sentencing position for defendant AMBER JANE WADE.

     This sentencing position is based upon the attached memorandum of points and authorities, the files and records in this case, the United States Probation and Pretrial Services Office's presentence

investigation report, and such further evidence and argument as the Court may permit.

The government respectfully requests the opportunity to supplement its position or otherwise respond to defendant as may become necessary.


Dated: December 19, 2022              Respectfully submitted,

                                      E. MARTIN ESTRADA
                                      United States Attorney

                                      SCOTT M. GARRINGER
                                      Assistant United States Attorney
                                      Chief, Criminal Division


                                      _____/s/_____
                                      DAVID C. LACHMAN
                                      NISHA CHANDRAN
                                      Assistant United States Attorneys

                                      Attorneys for Plaintiff
                                      UNITED STATES OF AMERICA

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

From August 31, 2020, to September 26, 2020, defendant AMBER JANE WADE ("defendant") fraudulently withdrew approximately $10,500 in Pandemic Unemployment Assistance benefits intended for residents of California who were unemployed because of the COVID-19 pandemic. Defendant's coconspirators created an account to receive benefits in the name of victim N.T.S.  Defendant then assumed N.T.S.'s identity and used the debit card issued in N.T.S.'s name to make eleven fraudulent cash withdrawals from ATMs operated by Bank of America, totaling approximately $10,500.  In September 2022, defendant pleaded guilty to one count of bank fraud in violation of 18 U.S.C. § 1344 (Count Nineteen) pursuant to a plea agreement filed with the Court on August 30, 2022.  (CR 238 ("Plea Agreement").)

The United States Probation & Pretrial Services Office ("USPPO") issued its Presentence Report ("PSR") and Recommendation Letter on October 11, 2022, calculating a total offense level of 7 and a Criminal History Category of III, which results in an advisory Guidelines range of four to ten months.  (CR 272, PSR; CR 271, Rec. Letter.)  The USPPO recommended a 15-day term of imprisonment for defendant, which would amount to time-served and reflects a downward variance from the advisory Guidelines range, followed by four months in a residential reentry center.  (Rec. Letter at 5.)  The USPPO also calculated that the intended and actual loss to California Employment Development Department was $10,500.  (PSR ¶ 47.)

For the reasons discussed more fully below, the government agrees with the PSR's total offense level calculation of 7 and the criminal history category.  The government, however, objects to the

PSR's recommended downward variance.  Here, the government respectfully requests that the Court sentence defendant to: (1) two months' imprisonment; (2) three years of supervised release, including a condition of four months in a residential reentry center; and (3) pay restitution in the amount of $10,500; and (4) pay a mandatory $100 special assessment.

## II.  DEFENDANT HELD A LIMITED ROLE IN A LARGE EDD FRAUD SCHEME

Defendant admitted to the following facts at her change of plea hearing and in the plea agreement (PSR ¶¶ 22-45; Plea Agreement ¶ 11):

Beginning on or about August 31, 2020, and continuing through at least on or about September 26, 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendant knowingly carried out a scheme or plan to obtain money or property from Bank of America by making false statements or promises; defendant knew that the statements or promises were false; the statements or promises were material, that is, they had a natural tendency to influence, or were capable of influencing, Bank of America to part with money or property; and defendant acted with the intent to defraud.  At all relevant times, Bank of America was a financial institution that was insured by the Federal Deposit Insurance Company.

Specifically, on August 13, 2020, coconspirators assumed victim N.T.S.'s identity and electronically filed an application in N.T.S.'s name for Pandemic Unemployment Assistance benefits, a form of unemployment insurance benefits for residents of California who were unemployed because of the COVID-19 pandemic ("pandemic benefits").  N.T.S. did not authorize anyone, including defendant's

coconspirators, to apply for pandemic benefits in his name.  The California Employment Development Department ("EDD") approved the application, created an EDD debit account with Bank of America in N.T.S.'s name, mailed a debit card linked to the EDD debit account to the mailing address coconspirators provided, and deposited unemployment insurance benefits, including pandemic assistance benefits, to the EDD debit account.

Beginning on or about August 31, 2020, defendant assumed N.T.S.'s identity and used the EDD debit card issued in N.T.S.'s name, ending in number 7456 (the "N.T.S. Card"), to make fraudulent cash withdrawals of pandemic benefits from ATMs operated by Bank of America in Los Angeles County.  On August 31, 2020, defendant withdrew $1,000 from a Bank of America ATM in Palmdale, California, using the N.T.S. Card.  On September 7, 2020, defendant withdrew $1,000 from a Bank of America ATM in Palmdale, California, using the N.T.S. Card.  On September 25, 2020, defendant withdrew $1,000 from a Bank of America ATM in Palmdale, California, using the N.T.S. Card. In total, defendant fraudulently withdrew approximately $10,500 in EDD funds from Bank of America ATMs using the N.T.S. Card in eleven separate transactions between August 31, 2020, and September 26, 2020.  N.T.S. did not know defendant and did not authorize her to use the N.T.S. Card to make withdrawals from the EDD debit account created in N.T.S.'s name.

N.T.S. faced difficulty during the pandemic and applied himself for unemployment pandemic benefits.  (PSR ¶ 48.)  He was denied that relief, however, because of this fraudulent scheme.  (Id.)  N.T.S. had to get a residential mortgage payment modification to prevent foreclosure on his home.  (Id.)   N.T.S. was disheartened he could

not benefit from the much-needed government assistance due to the fraud scheme.  (Id.)

## III.  THE PRESENTENCE INVESTIGATION REPORT

### A.    The Government Concurs with USPPO's Guidelines and Criminal History Calculations

The government agrees with the Guidelines calculation set forth in the PSR.  Based on the above facts, and consistent with the parties' plea agreement, the USPPO calculated a total offense level of 7.  The PSR's total offense level calculation is as follows:

Base Offense Level:        7    U.S.S.G. § 2B1.1(a)(1)

Loss of more than
$6,500 but not
more than $15,000:        +2   U.S.S.G. § 2B1.1(b)(1)(B)

Acceptance of
Responsibility:           -2   U.S.S.G. § 3E1.1(a)

_____

TOTAL:                     7

(PSR ¶¶ 54-65.)

Based on defendant's criminal history, the USPPO also determined that defendant has 6 criminal history points and falls within Criminal History Category III.  (Id. ¶ 80.)  The USPPO recognized that a total offense level of 7 and a Criminal History Category of III falls within Zone B of the Guidelines and results in an advisory Guidelines range of four to ten months, followed by a period of supervised release of two to five years on Count Nineteen, a Class B felony.  (Id. ¶¶ 124, 127.)  In the PSR, the USPPO did not identify any factors that would warrant a departure from the advisory guideline range.  (Id. ¶ 137.)

As noted above, and consistent with the parties' plea agreement, the government agrees with the PSR's total offense level calculation of 7.  More specifically, the government agrees that defendant's intended losses to EDD, and the actual losses that resulted, was $10,500, resulting in a 2-level increase.  (Id. ¶ 45, 56.)  The government also concurs with the PSR's criminal history calculation, restitution calculation of $10,500, and the mandatory payment of a $100 special assessment.  (Id. ¶¶ 78-80, 131, 134.)

**B.   The Government Objects To USPPO's Downward Variance**

Because a total offense level of 7 and a Criminal History Category of III yields an applicable Guidelines range of four to ten months, which falls within Zone B of the Sentencing Table, the USPPO recognized that the minimum term can be satisfied by a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in U.S.S.G. §5C1.1(e), provided that at least one month is satisfied by imprisonment.  (Id. ¶ 124; U.S.S.G. §5C1.1(c)(2).)  The USPPO recommended a sentence of 15 days in custody, to be followed by four months in a residential reentry center.  (Rec. Letter at 5.)  The 15 days' incarceration, however, would equate to time served for defendant and ignores the requirement that defendant serve at least a month of imprisonment.

Accordingly, the government objects to this downward variance in light of the seriousness of defendant's criminal conduct and its failure to comply with U.S.S.G. § 5C1.1(c)(2).  Defendant and her coconspirators, in total, opened hundreds of fraudulent EDD accounts and cost the EDD program millions of dollars.  (Id. ¶ 37.)  That scheme could not operate without runners like defendant to physically

5

withdraw the fraudulently obtained money.  And defendant personally
defrauded EDD out of approximately $10,500 over a period of less than
one month.  (Id. ¶ 45.)  In each of her eleven transactions,
defendant assumed the identity of victim N.T.S. and withdrew benefits
intended for Californians suffering unemployment as a result of the
COVID-19 pandemic.  And victim N.T.S. explained to USPPO the impact
to N.T.S.'s business and family as a result of not receiving those
funds – including jeopardizing his housing.  (Id. ¶ 48.)  Moreover,
defendant committed the instant conduct while on probation for her
2017 convictions (id. ¶ 79) and she has had difficulty on pretrial
release, sustaining multiple violations (id. ¶ 9.).

Within defendant's Guidelines range, the Court has discretion to
impose a sentence of imprisonment higher than the one month minimum
required by U.S.S.G. §5C1.1(c)(2).  See U.S.S.G. §5C1.1, App. Note 3.
For example, "where the guideline range is 4-10 months, . . . a
sentence of two months imprisonment followed by a term of supervised
release with a condition requiring four months of community
confinement or home detention . . . would be within the guideline
range."  Id.  Considering the seriousness of defendant's criminal
conduct, the government respectfully requests a within-Guidelines
sentence of two months' imprisonment, to be followed by three years
of supervised release, including a condition of four months in a
residential reentry center.

### C.  The Government Agrees That Four Months At A Residential Reentry Program Will Benefit Defendant

As the Court is aware, defendant struggled on pretrial release.
(CR 265; CR 276.)  As discussed in the latest Alleged Violation
Report, defendant has been "marginally complaint" and has struggled

6

with stable housing, stable communication with her USPPO officer, and has most recently submitted three diluted samples for drug testing. (CR 276, Violation Report, at 3.)  Moreover, as discussed, defendant committed the instant offense while on probation.  (PSR ¶ 79.)  More recently, defendant found housing, is employed, and has not submitted a positive drug test while on pretrial release.  (Violation Report at 3).  But defendant is still struggling with communication with her USPPO officer and submitting diluted samples.  (Id.)  A residential reentry center will give defendant tools so that she will hopefully succeed while on supervised release.

## IV.   THE GOVERNMENT RECOMMENDS TWO MONTHS' INCARCERATION HERE

The government recommends that the defendant be sentenced to a Guidelines term of two months' imprisonment, followed by a three-year period of supervised release to include four months in a residential reentry center, to pay a $100 special assessment, and to pay restitution of $10,500.  This sentence is sufficient, but not greater than necessary, to achieve the purposes in 18 U.S.C. § 3553(a).

### A.   Nature And Circumstances Of The Offense And History And Characteristics Of Defendant

The nature and circumstances of defendant's offense supports a Guidelines sentence of two months' imprisonment to be followed by four months in a residential reentry center.  18 U.S.C. § 3553(a)(1).

In mitigation, defendant occupied a small role in the overall scheme, withdrawing a small percentage of the overall loss. Defendant also faced difficult circumstances in the period leading up to her participation in the scheme.  In 2017, defendant lost her father, with whom she had a close relationship.  (Id. ¶ 98.) Defendant also reported exhausting her savings to help her father as

7

he was unable to work due to his illness.  (Id.)  Defendant welcomed her second child in 2020, but the father of that child physically and emotionally abused her, including punching her in the face, fracturing her jaw, while she was eight months pregnant.  (Id. ¶ 100.)  She lost custody of both of her children in February 2020 due to the physical abuse in the household, which defendant reports took a physical and mental toll on her.  (Id. ¶ 102, 103.)  These factors support a sentence combining custodial time and a period of community confinement consistent with U.S.S.G. §5C1.1(c)(2).  That said, a meaningful custodial sentence greater than time served is necessary in light of the seriousness of defendant's criminal conduct.

On balance, the nature and circumstances of the offense and defendant's history and characteristics support the government's recommended Guidelines sentence.

**B.    Need For The Sentence To Reflect The Offense's Seriousness, Promote Respect For The Law, Provide Just Punishment, Afford Adequate Deterrence, And Protect The Public**

The sentence must satisfy the need to punish defendant, as well as society's need to reflect the seriousness of the offense; promote respect for the law; provide just punishment; afford adequate deterrence; and protect the public.  18 U.S.C. § 3553(a)(2).  Here, the government's recommended sentence will provide deterrence both to defendant and to others who might otherwise be inclined to perpetrate a similar crime.  Moreover, because the Guidelines calculation reflects the fact the defendant committed the instant offense while on probation, a within-Guidelines sentence promotes respect for the law.

### C.   Need To Avoid Unwarranted Disparities

Section 3553(a)(6) requires the Court to minimize sentencing disparities among similarly situated defendants.  One way of doing so is to correctly calculate the Guidelines range and then sentence defendants within that range.  See United States v. Treadwell, 593 F.3d 990, 1011 (9th Cir. 2010) ("Because the Guidelines range was correctly calculated, the district court was entitled to rely on the Guidelines range in determining that there was no 'unwarranted disparity' . . . ."); Gall v. United States, 552 U.S. 38, 54 (2007) ("[A]voidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges.").  Here, under the correctly calculated Guidelines range, other defendants "with similar records who have been found guilty of similar conduct" as defendant, can expect a prison sentence between four and ten months' imprisonment.  See U.S.S.G. § 5A (Sentencing Table).  As such, the government's within-Guidelines recommended sentence avoids an unwarranted disparity with similarly situated defendants.

## V.   CONCLUSION

For the foregoing reasons, the government recommends that the Court sentence defendant to two months' imprisonment, three years' supervised release to include four months in a residential reentry center, a $100 special assessment, and restitution of $10,500.